ANDREW T. WHITCOMB,

                Plaintiff,

v.                                              Case No. 23-cv-385-pp

DR. SUKOWAY, JUDY FIELDS
and JOHN AND JANE DOES,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A, ORDERING DEFENDANT TO RESPOND TO PLAINTIFF'S ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION (DKT. NO. 3) AND DENYING AS MOOT PLAINTIFF'S SECOND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION (DKT. NO. 5)**

      Andrew T. Whitcomb, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants failed to provide him proper treatment for his ventral hernia and are refusing to schedule him for necessary surgery. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, screens his complaint, dkt. no. 1, orders the defendant to respond to the plaintiff's first request for injunctive relief (captioned as an "order to show cause for an [sic] preliminary injunction," dkt. no. 3, and denies as moot the plaintiff's second motion for injunctive relief, dkt. no. 5.

## I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On April 12, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $1.96. Dkt. No. 8. The court received that fee on May 2, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The complaint names as defendants Dr. Sukoway, Advanced Practice Nurse Prescriber Judy Fields and John or Jane Doe Managers of the Health Services Unit (HSU). Dkt. No. 1 at 1. The complaint alleges that all the defendants work at Waupun, where the plaintiff remains incarcerated. Id.

The plaintiff alleges that he has a large hernia that is causing him pain, but that Dr. Sukoway has failed to "give [him] anything to help with the pain." Id. at ¶¶1–2. He alleges that on November 7, 2022, Dr. Karen Reynolds, a surgeon at Waupun Memorial Hospital (who is not a defendant), informed the plaintiff that he needed immediate surgery. Id. at ¶4. The plaintiff alleges that Dr. Reynolds's order was sent back to Waupun, but that the defendants have refused to schedule him for surgery to treat his hernia and pain. Id. at ¶¶3, 5.

The plaintiff alleges that by refusing him the surgery, the defendants have put his life and safety at risk due to possible complications from the hernia. Id. at ¶6. He says he has tried "to kill [him]self due to the amount of pain [he is] in everyday and as a way to escape dealing with it." Id. He alleges that Dr. Sukoway told him he "did it to [him]self" because of the number of times he has required surgery to remove a foreign body that the plaintiff ingested in an attempt to kill himself. Id. at ¶7. The plaintiff claims that Dr. Sukoway is "using [his] mental health against [him]." Id. He says Dr. Sukoway told him that he needs "to go for [two] years with [no] self harm or suicide attempts before they will even consider granting [him] the surgery." Id. at ¶8. The plaintiff asserts that that policy violates his rights and "is unethical

and demoralizing along with inhumane." Id. The plaintiff says defendant Fields and other unnamed members of the HSU and Psychological Services Unit "think [his] life is at risk and that [he] may do something to kill [him]self in an attempt to get away from hav[]ing to deal with this any[]more." Id. at ¶9.

Along with the complaint, the plaintiff filled a document titled "Order to Show Cause for An [sic] Preliminary Injunction." Dkt. No. 3. He asks the court to order the Department of Corrections to give him the surgery and to stop delaying and blocking his access to the surgery. Id. at 3. The plaintiff re-filed this motion six days later, on March 30, 2023. Dkt. No. 5. He attached to the motions for injunctive relief identical copies of his medical records. Dkt. No. 3-1; Dkt. No. 5-1.[1] The records include the report from Dr. Reynolds recommending the plaintiff be scheduled "ASAP" for "open ventral hernia" surgery. Dkt. No. 3-1 at 1. Also included are progress notes from the prison. The most recent is a November 14, 2022 report from defendant Fields, who saw the plaintiff "for follow up [after his] recent hospitalization." Id. at 3. Fields notes that the plaintiff had had three "ER visits in the last month for abdominal pain, nausea, vomiting." Id. She noted the plaintiff's pain, which was not alleviated by Tylenol, and his concern about an obstruction. Id. The plaintiff reported "that he is trying to keep himself from doing anything to himself that would make it an emergency," but that "if [he] die[s], it will solve everything, the pain, being in prison." Id. Fields reported her concern "that

---

[1] The documents in Dkt. No. 5-1 are the same as in 3-1, but some of the pages in 3-1 do not appear in 5-1.

patient's mental state will cause patient to do something drastic due to abdominal pain that may cause death." Id. She discussed his case with the HSU Manager, who she refers to only as "Rob," and Rob called the Psychological Services Unit to discuss the situation with them. Id. She also sent a message to Dr. Sukoway with updated information about the plaintiff's ER visits and surgical recommendation. Id.

The attachments also include earlier medical notes from visits on November 10 and October 7, 2022. Id. at 5–7. During the November 10, 2022 visit, the plaintiff was "rocking back a[]nd forth" and moaning, so the provider (not a defendant) had difficulty assessing his blood pressure and bowel sounds. Id. at 5. The plaintiff reported vomiting several times that day and being unable to keep food or fluids down. Id. The provider noted that the plaintiff's ventral hernia was "larger than grapefruit and firm," and that the provider was unable to reduce the hernia. Id. The October 7, 2022 note is a letter from another non-defendant provider at Waupun about the plaintiff's ultrasound results. Id. at 7. That provider writes, "As expected, you have a large ventral hernia containing bowel." Id. He says he placed an order for a surgical consult (which the plaintiff received a month later with Dr. Reynolds), and he advised the plaintiff to contact the HSU if he noticed "any signs of bowel obstruction." Id.

The plaintiff seeks monetary damages for his pain, suffering and mental and emotional harm. Dkt. No. 1 at 2.

C.  Analysis

The court reviews the plaintiff's allegations under the Eighth Amendment, which "protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976). To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (en banc) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

To satisfy the objective component, the plaintiff must show that he had a medical condition "that is so obvious that even a lay person would perceive the need for a doctor's attention." Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." Arnett v. Webster, 658 F.3d 742, 753 (7th Cir. 2011) (citing McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010)). Whether the length of a delay is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'" Id. (quoting McGowan, 612 F.3d at 640). A prison official shows deliberate indifference when he

"realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837).

The plaintiff alleges that he has a hernia that is causing him severe pain and that he has been recommended for surgical correction. There are different kinds of hernia, and some do not require surgical intervention; those are known as reducible hernias, "which means that the hernia can be pushed back inside the body without difficulty." Johnson v. Doughty, 433 F.3d 1001, 1003 (7th Cir. 2006). The plaintiff alleges, and his medical notes confirm, that his is not that kind of hernia. His is a non-reducible, "strangulated" hernia—"an emergency surgical situation in which the hernia is non-reducible and possibly gangrenous, i.e., causing abdominal tissue decay." Id. at 1004. The court finds that the plaintiff has alleged facts sufficient to demonstrate that he suffers from an objectively serious medical condition.

The plaintiff alleges that the defendants are aware of his hernia, and that a surgeon recommended in November 2022 that he undergo immediate surgery to correct it. He says that nonetheless, he has not received surgery and he remains in severe pain. He says he has debated hurting himself, perhaps even ending his life, to end the pain that he experiences daily. His medical notes confirm that the defendants are aware of his hernia and the recommendation for surgery. His notes show that defendant Fields examined him as recently as November 14, 2022 and relayed to Dr. Sukoway her concern about the plaintiff's pain and potential suicidal ideations. Fields also told the HSU Manager (Rob) about her concern, and Rob contacted the Psychological

Services Unit about the plaintiff. The plaintiff did not attach any medical records from visits with Dr. Sukoway, but he alleges that that doctor has refused to allow him to undergo the surgery because he previously attempted self-harm by swallowing objects that required surgical intervention.

The complaint and the attached medical records support a claim that Dr. Sukoway is aware of but has disregarded the plaintiff's serious medical need by refusing him surgery for his hernia. The complaint alleges that Dr. Sukoway told the plaintiff he will need to go two years without harming himself before he may receive the surgery. If that is true (and the court must accept that it is at this stage of the proceedings), it suggests that Dr. Sukoway has put the plaintiff's life at risk by denying him necessary surgery. The court recognizes the difficulty in dealing with an incarcerated person who has harmed himself, required repeat surgery for self-harm by swallowing foreign objects and threatened again to harm himself. It can be difficult to know when an incarcerated person is bluffing to get something he wants and when he needs immediate treatment. A medical professional reasonably may not want to provide specific treatment to an incarcerated person with a known history of manipulating staff with his self-harming actions. But the plaintiff's previous mental-health issues are not a justification for denying him necessary emergency surgery for serious medical issues, such as a ventral hernia. If the plaintiff's allegations are true, then that is what Dr. Sukoway has done. The court will allow the plaintiff to proceed on an Eighth Amendment claim against Dr. Sukoway.

The plaintiff may not proceed against any other defendant. The plaintiff generally alleges that all the defendants equally have denied him surgery and been indifferent to his medical need. But he has not alleged what any defendant other than Dr. Sukoway specifically did to disregard his medical needs. His attached medical records show defendant Fields has *not* been deliberately indifferent to his needs. To the contrary, the records show that Fields examined the plaintiff and expressed concern about his physical and mental health to Dr. Sukoway and the HSU Manager at Waupun. The HSU Manager similarly contacted the Psychological Services Unit about the plaintiff's expressed thoughts of harming himself. Contrary to the plaintiff's allegations, these records show that Fields and the HSU Manager have addressed the plaintiff's needs and contacted other medical professionals at the prison to discuss treatment. The records do not show that Fields and the HSU Manager have disregarded the plaintiff's medical need or intentionally delayed him treatment. The court will dismiss those defendants.

### III. Motions for Injunctive Relief (Dkt. Nos. 3, 5)

The plaintiff filed two, identical motions seeking an order to show cause for a preliminary injunction ordering the defendants to provide him the hernia surgery that Dr. Reynolds recommended. Dkt. No. 3, 5. These motions recount the facts alleged in the complaint, which the court discussed above. The plaintiff asks the court to order the defendants and the Wisconsin Department of Corrections to provide him the hernia surgery Dr. Reynolds recommended "and stop delaying and blocking this from happening." Dkt. No. 3 at 3.

To obtain preliminary injunctive relief, the plaintiff must show that (1) his underlying case has some likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) he will suffer irreparable harm without the injunction. Wood v. Buss, 496 F.3d 620, 622 (7th Cir. 2007). A preliminary injunction is not appropriate to guard against the "mere possibility of irreparable injury." Orr v. Shicker, 953 F.3d 490, 501 (7th Cir. 2020) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008)). If the plaintiff can establish those three threshold factors, then the court must balance the harm to each party and to the public interest from granting or denying the injunction. See Wood, 496 F.3d at 622; Korte v. Sebelius, 735 F.3d 654, 665 (7th Cir. 2013); Cooper v. Salazar, 196 F.3d 809, 813 (7th Cir. 1999). The balancing analysis "involves a 'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." Mays v. Dart, 974 F.3d 810, 818 (7th Cir. 2020) (citing Ty, Inc. v. Jones Grp., Inc., 237 F.3d 891, 895 (7th Cir. 2001)). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).

In the context of litigation by incarcerated persons, the scope of the court's authority to issue an injunction is circumscribed by the PLRA. See Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and

11
Case 2:23-cv-00385-PP   Filed 05/25/23   Page 11 of 16   Document 9

be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2); see also Westefer, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: [P]rison officials have broad administrative and discretionary authority over the institutions they manage" (internal quotation marks and citation omitted)).

Although the court must accept the allegations in the complaint as true for purposes of screening, the plaintiff's medical records confirm that Dr. Reynolds recommended in November 2022 that he undergo surgery to correct his hernia, and that he has continued to suffer without it. The plaintiff says he fears for his physical and mental health, and his medical records show medical staff also are concerned. Dr. Sukoway has been made aware of the plaintiff's need for surgery, yet the plaintiff remains in pain without it. All of this suggests the plaintiff is likely to succeed on the merits of his claim that Dr. Sukoway is denying him necessary medical treatment. The plaintiff also satisfies the second requirement to show no adequate remedy at law exists. The plaintiff seeks damages in this lawsuit, which may compensate him for the delay in receiving surgery and the pain he has endured in the interim. But those damages would not relieve his ongoing pain, which if left untreated could result in permanent harm or even the plaintiff's death. That risk also satisfies the third element—to show that the plaintiff would suffer irreparable harm without the court order he seeks requiring his referral for surgery.

The court also finds that ordering this injunctive relief would not harm the defendant and would benefit the plaintiff. The plaintiff already has a recommendation for immediate surgery from an outside surgeon. All that is needed is for the prison to schedule that surgery and return him to the hospital so that it can take place. The public interest will be served by this requirement because the citizens of Wisconsin have "a strong interest in the provision of constitutionally-adequate health care to prisoners." Flynn v. Doyle, 630 F. Supp. 2d 987, 993 (E.D. Wis. 2009); see Foster v. Ghosh, 4 F. Supp. 3d 974, 984 (N.D. Ill. 2013) (granting preliminary injunction for medical treatment and noting that the public has "a vested interest in ensuring that the constitutional rights of its citizens are protected"). For the same reasons, this relief would not extend further than necessary to correct the harm. The plaintiff would receive his necessary, recommended surgery and be returned to the prison. The injunction would not require an order for additional or preferential treatment, and it would not require the prison to administer medical treatment to incarcerated persons differently in the future. This narrow relief would not intrude into the administrative or discretionary decision of the prison and is within the bounds of appropriate injunctive relief contemplated by the PLRA.

The court finds that the plaintiff has satisfied the requirements to obtain injunctive relief, and it is inclined to grant the plaintiff's motion. But the plaintiff filed his motion before the court had an opportunity to screen his complaint, so the defendant has not been served with the complaint or the motion and may not be aware of the plaintiff's allegations. The court may issue

a preliminary injunction "only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). The court will defer ruling on the plaintiff's motion until the defendant has an opportunity to review it and to respond. The court will order the defendant to respond to the allegations in the plaintiff's motion for injunctive relief by the below deadline. The court then will review the response and determine whether a hearing is warranted; if not, the court will rule on the motion. The court will deny the plaintiff's second motion for injunctive relief (Dkt. No. 5) because it is duplicative of the first motion and is unnecessary.

**IV. Conclusion**

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** Judy Fields and John and Jane Doe as defendants.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendant Dr. Sukoway at Waupun Correctional Institution. Under the informal service agreement, the court **ORDERS** the defendant to respond to the complaint within 60 days.

The court **DENIES AS MOOT** the plaintiff's second motion for injunctive relief. Dkt. No. 5.

The court **ORDERS** that by the end of the day on **June 2, 2023**, the defendant must respond to the allegations in the plaintiff's first motion for

injunctive relief. Dkt. No. 3. The court will rule on the plaintiff's motion after the defendant has had an opportunity to respond.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$348.04** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 25th day of May, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**